1  Pamela Petersen (No. 011512)
2  Holly Gibeaut (No. 019786)
   Isaiah Fields (No. 024640)
3  Michael Brave (No. 026849)
4  TASER International, Inc.
   17800 N. 85th Street
5  Scottsdale, Arizona 85255
6  Telephone: 480.502.6280
   Fax: 480.905.2027
7  ppetersen@TASER.com
8  hgibeaut@TASER.com
   Isaiah@TASER.com
9  brave@TASER.com
10 *Attorneys for Defendant TASER International, Inc.*

11                **IN THE UNITED STATES DISTRICT COURT**
12                  **FOR THE DISTRICT OF ARIZONA**

13 | L. Alicia Rascon, *individually, and as the* | No. CV-14-00749-PHX-BSB |
14 | *Personal Representative of the Estate of* | |
   | *Jorge E. Sanchez*; Juan A. Sanchez; and | **DEFENDANT TASER** |
15 | Toni Marquis, *as the Parent and* | **INTERNATIONAL, INC.'s ANSWER** |
16 | *Next Friend of A.M., a minor*; | **TO PLAINTIFFS' FIRST AMENDED** |
   | | **COMPLAINT AND DEMAND FOR** |
17 | Plaintiffs, | **JURY TRIAL** |
18 |                    vs. | |
19 | Clinton H. Brookins (#9452); Jeremy | |
20 | King (#9144); Nicholas R. Welch | |
   | (#9374); Steven Squier (#9147); City of | |
21 | Phoenix, Arizona; and TASER | |
22 | International, Inc.; | |
23 | Defendants. | |

24

25        Defendant TASER International, Inc. ("TASER" or "Defendant") answers

26 Plaintiffs' First Amended Complaint, filed July 14, 2014 (Dkt. 26) (the "Complaint"), as

27 follows.  Defendant notes that for ease of reference, Plaintiffs' allegations are set forth

28 verbatim, with Defendant's ANSWERs following each allegation.

**Introduction**

This case involves Jorge E. Sanchez, who died at the hands of Clinton H. Brookins (#9452), Jeremy King (#9144), Nicholas R. Welch (#9374), and Steven Squier (#9147), police officers employed by the City of Phoenix, Arizona. When the Defendant police officers killed Mr. Sanchez, he had not committed any serious or violent crimes, had not hurt anyone, and did not present as a threat to anyone. The Defendant police officers unlawfully killed Mr. Sanchez by TASERing him in the left chest for 53 of 59 seconds, while carotid choking him, and handcuffing and hogtying him. The policies, practices, and customs of the City of Phoenix, Arizona, and the defective and dangerous products of TASER® International, Inc., also caused Mr. Sanchez's death.

**ANSWER: TASER denies that exposure to a TASER® CEW caused or contributed to decedent's death. TASER does not have sufficient information or belief to enable it to answer the remaining allegation in this paragraph, and on those grounds denies generally and specifically each and every remaining allegation contained therein.**

**Jurisdiction and Venue**

1.     This action is brought pursuant to 42 U.S.C. § 1983.

**ANSWER:   TASER states that the allegations in Paragraph 1 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER does not have sufficient information or belief to enable TASER to answer this paragraph, and on those grounds denies generally and specifically each and every allegation contained therein.**

2.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 & 1367.

**ANSWER:   TASER states that the allegations in Paragraph 2 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER does not have sufficient information or belief to enable TASER to answer this paragraph, and on those grounds denies generally and specifically**

each and every allegation contained therein.

3.     Venue is proper in this Court, as all Defendants are located within the District of Arizona, and the cause of action arose in the District of Arizona.

**ANSWER:  TASER states that the allegations in Paragraph 3 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER does not have sufficient information or belief to enable TASER to answer this paragraph, and on those grounds denies generally and specifically each and every allegation contained therein.**

4.     On or about October 4, 2012, the Defendant, City of Phoenix, Arizona, and the Individual Defendants, were served with a detailed written notice of the Plaintiffs' complaints as stated herein.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 4, and on those grounds, denies generally and specifically each and every allegation contained therein.**

## Parties

5.     Plaintiff, L. Alicia Rascon, is the biological mother of the decedent, Jorge E. Sanchez, and is the Personal Representative of the Estate of Jorge E. Sanchez.  Ms. Rascon is an adult who currently resides in Gardena, California.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 5, and on those grounds, denies generally and specifically each and every allegation contained therein.**

6.     Plaintiff, Toni Marquis, is the biological mother of A.M., a minor, who is the biological daughter of the decedent, Jorge E. Sanchez.  Ms. Marquis is an adult who currently resides in Phoenix, Arizona.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 6, and on those grounds, denies generally and specifically each and every allegation contained therein.**

7.     Plaintiff, Juan A. Sanchez, is the biological father of the decedent, Jorge E.

Sanchez.  Mr. Sanchez is an adult who currently resides in Tucson, Arizona.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 7, and on those grounds, denies generally and specifically each and every allegation contained therein.[1]**

8.      Defendant, Clinton Brookins, is an adult individual, who, during all relevant times, was employed by the City of Phoenix, Arizona, as a police officer. All of Defendant Brookins' actions or inactions were taken under color of state law. He is sued in his individual capacity.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 8, and on those grounds, denies generally and specifically each and every allegation contained therein.**

9.      Defendant, Jeremy King, is an adult individual, who, during all relevant times, was employed by the City of Phoenix, Arizona, as a police officer. All of Defendant King's actions or inactions were taken under color of state law. He is sued in his individual capacity.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 9, and on those grounds, denies generally and specifically each and every allegation contained therein.**

10.      Defendant, Nicholas Welch, is an adult individual, who, during all relevant times, was employed by the City of Phoenix, Arizona, as a police officer. All of Defendant Welch's actions or inactions were taken under color of state law. He is sued in his individual capacity.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 10, and on those grounds, denies generally and specifically each and every allegation contained therein.**

---

[1] On July 22, 2014, Plaintiffs' counsel informed Defendants that Juan A. Sanchez requested to be dismissed from this lawsuit as a plaintiff.  To date, Plaintiff Juan A. Sanchez has not filed a request for dismissal.

11.     Defendant, Steven Squier, is an adult individual, who, during all relevant times, was employed by the City of Phoenix, Arizona, as a police officer. All of Defendant Squier's actions or inactions were taken under color of state law. He is sued in his individual capacity.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 11, and on those grounds, denies generally and specifically each and every allegation contained therein.**

12.     Defendant, City of Phoenix, Arizona (hereafter "City" or "City of Phoenix") was incorporated as a City in 1881. The City owns and operates the Phoenix Police Department, which during all relevant times, employed the Individual Defendants.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 12, and on those grounds, denies generally and specifically each and every allegation contained therein.**

13.     Defendant, TASER® International, Inc. (hereinafter "TASER® International"), is a Delaware Corporation that is licensed to do business in the State of Arizona. TASER®'s corporate office is located at 17800 North 85th Street, Scottsdale, Arizona 85255. TASER® is the manufacturer of an electrical control device ("ECD") commonly referred to as a TASER, which is used for the neuromuscular incapacitation of individuals.

**ANSWER:  TASER admits that it is incorporated in the State of Delaware, is licensed to do business in State of Arizona, that it has an office at 17800 North 85th Street, Scottsdale, Arizona 85255, and that it manufactures ECDs, also known as conducted electrical weapons ("CEWs"). TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 13, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

## Factual Background

14.     The Decedent is Jorge Esteban Sanchez, age 31, who, is known to his family

1  as "Bebo" which, in Spanish, means "little boy."

2  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

3  **answer Paragraph 14, and on those grounds, denies generally and specifically each**

4  **and every allegation contained therein.**

5      15.    In life, Mr. Sanchez was fun-loving, comedic, and high-spirited, but battled

6  a drug addiction.

7  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

8  **answer Paragraph 15, and on those grounds, denies generally and specifically each**

9  **and every allegation contained therein.**

10     16.    Mr. Sanchez is survived by A.M., a minor, his biological daughter; Alicia

11  Rascon, his biological mother; Juan A. Sanchez, his biological father; Juan M. Sanchez,

12  his biological brother; Gilda M. Sanchez, his biological sister; and Adrian A. Sanchez,

13  his biological brother.

14  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

15  **answer Paragraph 16, and on those grounds, denies generally and specifically each**

16  **and every allegation contained therein.**

17     17.    On April 10, 2012, at approximately 10:20 PM, police officers from the

18  Phoenix Police department were dispatched to the CVS located at 1855 West Thunderbird

19  Road, in the City of Phoenix, Arizona, to investigate a report of a male who was pacing

20  in the parking lot.

21  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

22  **answer Paragraph 17, and on those grounds, denies generally and specifically each**

23  **and every allegation contained therein.**

24     18.    On the same date and approximate time, officers from the Phoenix Police

25  Department were dispatched to the area of 20th Lane and Thunderbird Road, in the City

26  of Phoenix, Arizona, to investigate a report of a male waking eastbound who had blood

27  on his abdomen and who claimed to have been hit by a car or shot.

28  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

**answer Paragraph 18, and on those grounds, denies generally and specifically each and every allegation contained therein.**

19.   As officers responded to the second dispatch, they encountered the decedent, Jorge E. Sanchez, who matched the description of the male in both dispatches, walking eastbound, in the area of Macayo's Mexican Restaurant, 1909 W. Thunderbird Road, in the City of Phoenix, Arizona.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 19, and on those grounds, denies generally and specifically each and every allegation contained therein.**

20.   Defendant's, Welch and King, admit that Mr. Sanchez advised them that he had been hit by a car, and then watched as he walked out into the roadway and laid down.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 20, and on those grounds, denies generally and specifically each and every allegation contained therein.**

21.   Instead of blocking the roadway and assessing Mr. Sanchez's medical condition and needs, Defendants, Welch and King, admit that they dragged Mr. Sanchez by his arms out of the roadway and onto the sidewalk, which apparently aggravated Mr. Sanchez, who was already confused and injured.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 21, and on those grounds, denies generally and specifically each and every allegation contained therein.**

22.   Around this time, Defendants, Brookins and Squier, arrived.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 22, and on those grounds, denies generally and specifically each and every allegation contained therein.**

23.   The Individual Defendants admit that upon encountering Mr. Sanchez, they observed blood on his arms and heard him moaning.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012.**

**TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 23, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

24.     Moreover, the Individual Defendants admit that when Mr. Sanchez spoke, his statements were not coherent.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 24, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

25.     The Individual Defendants knew or should have known that Mr. Sanchez was under the influence of drugs and/or alcohol, and was physically injured.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 25, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

26.     The Individual Defendants recognized that Mr. Sanchez's conduct was a symptom of a deteriorating medical condition, and not criminal in nature, yet they delayed attempting to provide him with necessary emergency medical care.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 26, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

27.     The Individual Defendants claim that Mr. Sanchez "stood up and began to swing at Officers."

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 27, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

28.     Mr. Sanchez, however, did not hit any of the Individual Defendants.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 28, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

29.     Mr. Sanchez did not pose a threat to any of the Individual Defendants or to any third parties.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 29, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

30.     Mr. Sanchez had not committed any serious and/or violent crimes.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 30, and on those grounds, denies generally and specifically each and every allegation contained therein.**

31.     Regardless, the Individual Defendants physically forced Mr. Sanchez to the ground "because he was not complying and continuing to swing his arms."

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 31, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

32.     Defendant Welch then struck Mr. Sanchez in his ribs breaking several of his ribs.

**ANSWER:    TASER lacks sufficient information or belief to enable TASER to answer Paragraph 32, and on those grounds, denies generally and specifically each and every allegation contained therein.**

33.     Mr. Sanchez stood up, at which time Defendant King deployed a TASER into Mr. Sanchez's left chest.

1  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
2  **answer Paragraph 33, and on those grounds, denies generally and specifically each**
3  **and every allegation contained therein.**

4  34.   Mr. Sanchez began to walk away, which posed no threat to himself or
5  others.

6  **ANSWER:  TASER lacks sufficient information or belief to enable TASER to**
7  **answer Paragraph 34, and on those grounds, denies generally and specifically each**
8  **and every allegation contained therein.**

9  35.   Defendant King followed alongside Mr. Sanchez, so that the TASER
10  prongs would remain lodged in Mr. Sanchez's left chest.

11  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
12  **answer Paragraph 35, and on those grounds, denies generally and specifically each**
13  **and every allegation contained therein.**

14  36.   Defendant King repeatedly cycled the TASER; thereby continuing to
15  deliver an electrical charge into Mr. Sanchez's heart.

16  **ANSWER:   TASER denies that a TASER CEW delivered electrical charge into Mr.**
17  **Sanchez's heart.  TASER lacks sufficient information or belief to enable TASER to**
18  **answer the remaining allegations in Paragraph 36, and on those grounds, denies**
19  **generally and specifically each and every remaining allegation contained therein.**

20  37.   While Defendant King continued to cycle the TASER, Defendant
21  "Brookins ran into the back of the subject and knocked him down."

22  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
23  **answer Paragraph 37, and on those grounds, denies generally and specifically each**
24  **and every allegation contained therein.**

25  38.   Defendant "Brookins placed his left forearm across the subjects neck and
26  placed another hand above his ear, pinning his head downward."

27  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
28  **answer Paragraph 38, and on those grounds, denies generally and specifically each**

1  and every allegation contained therein.

2         39.    Defendant Squier admits that he held Mr. Sanchez's legs.

3  **ANSWER:    TASER lacks sufficient information or belief to enable TASER to**
4  **answer Paragraph 39, and on those grounds, denies generally and specifically each**
5  **and every allegation contained therein.**

6         40.    Defendant Welch either alone or with the assistance of the other Individual
7  Defendants, applied handcuffs to Mr. Sanchez's writs (that had been pulled behind his
8  back).

9  **ANSWER:  TASER denies that it encountered Mr. Sanchez on April 10, 2012.**
10 **TASER lacks sufficient information or belief to enable TASER to answer the**
11 **remaining allegations in Paragraph 40, and on those grounds, denies generally and**
12 **specifically each and every remaining allegation contained therein.**

13        41.    After Mr. Sánchez was handcuffed, Mr. Sanchez's "Legs were ultimately
14 folded upward towards his buttocks" by one or more of the Individual Defendants, while
15 he was handcuffed and face-down on the pavement.

16 **ANSWER:  TASER denies that it encountered Mr. Sanchez on April 10, 2012.**
17 **TASER lacks sufficient information or belief to enable TASER to answer the**
18 **remaining allegations in Paragraph 41, and on those grounds, denies generally and**
19 **specifically each and every remaining allegation contained therein.**

20        42.    When Mr. Sanchez went limp, Defendant King stopped cycling the TASER
21 and Defendant Brookins released pressure from Mr. Sanchez's neck.

22 **ANSWER:    TASER lacks sufficient information or belief to enable TASER to**
23 **answer Paragraph 42, and on those grounds, denies generally and specifically each**
24 **and every allegation contained therein.**

25        43.    Defendant Brookins was the last of the Individual Defendants to get up off
26 of Mr. Sanchez.

27 **ANSWER:  TASER denies that it encountered Mr. Sanchez on April 10, 2012.**
28 **TASER lacks sufficient information or belief to enable TASER to answer the**

1   **remaining allegations in Paragraph 43, and on those grounds, denies generally and**

2   **specifically each and every remaining allegation contained therein.**

3         44.    It was discovered that Mr. Sanchez was no longer breathing.

4   **ANSWER:     TASER lacks sufficient information or belief to enable TASER to**

5   **answer Paragraph 44, and on those grounds, denies generally and specifically each**

6   **and every allegation contained therein.**

7         45.    The restraints were removed from Mr. Sanchez and CPR was initiated.

8   **ANSWER:     TASER lacks sufficient information or belief to enable TASER to**

9   **answer Paragraph 45, and on those grounds, denies generally and specifically each**

10  **and every allegation contained therein.**

11        46.    Mr. Sanchez was transported by ambulance to the John C. Lincoln-North

12  Mountain Medical Center, 250 E. Dunlap Avenue, in the City of Phoenix, Arizona.

13  **ANSWER:     TASER lacks sufficient information or belief to enable TASER to**

14  **answer Paragraph 46, and on those grounds, denies generally and specifically each**

15  **and every allegation contained therein.**

16        47.    On April 10, 2012, at 10:55 PM, Mr. Sanchez was pronounced dead.

17  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

18  **answer Paragraph 47, and on those grounds, denies generally and specifically each**

19  **and every allegation contained therein.**

20        48.    Each of the Individual Defendants had an appreciable opportunity to

21  intervene to stop each of the other Individual Defendants from engaging in the use of

22  force discussed herein but failed to do so.

23  **ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012.**

24  **TASER lacks sufficient information or belief to enable TASER to answer the**

25  **remaining allegations in Paragraph 48, and on those grounds, denies generally and**

26  **specifically each and every remaining allegation contained therein.**

27        49.    Instead, each of the Individual Defendants participated in the use of force

28  engaged in by each of the other Individual Defendants.

**ANSWER:   TASER denies that it encountered Mr. Sanchez on April 10, 2012, and denies that is engaged in any alleged use of force against Mr. Sanchez.  TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 49, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

50.    A short time after the incident, Defendant Brookins was observed with abrasions on the knuckles of his right hand and his right wrist, Defendant Squier was observed with what appeared to be blood transfer on the left side of his neck, and Defendant Welch was observed with what appeared to be blood transfer on his forearms.

**ANSWER:    TASER lacks sufficient information or belief to enable TASER to answer Paragraph 50, and on those grounds, denies generally and specifically each and every allegation contained therein.**

51.    The Phoenix Fire Department EMS Incident Report indicates that officers reported to EMS personnel that they had '"tased him twice' & 'carotid choked him twice.'"

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 51, and on those grounds, denies generally and specifically each and every allegation contained therein.**

52.    Police officers, who notified Ms. Rascon of the death of her son, confirmed that Mr. Sanchez had not injured anyone.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 52, and on those grounds, denies generally and specifically each and every allegation contained therein.**

53.    At the time of his death, Mr. Sanchez possessed a cellphone and other personal property, which the Defendant City seized and has not returned to the family.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 53, and on those grounds, denies generally and specifically each and every allegation contained therein.**

54. The TASER used on Mr. Sanchez is a model X26 TASER, serial number X00-561139, manufactured by Defendant TASER® International, purchased by the Defendant City, and issued by the Defendant City to Defendant King.

**ANSWER:** **TASER admits that it manufactured a model X26 CEW with serial number X00-561139. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 54, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

55. The records of the Defendant City indicate that Defendant King activated the X26 TASER as follows:

| START | END | DURATION |
|-------|-----|----------|
| 22:27:16 | 22:27:35 | 19 Seconds |
| 22:27:39 | 22:28:08 | 29 Seconds |
| 22:28:10 | 22:28:15 | 5 Seconds |

TOTAL DURATION:  53 Seconds

**ANSWER:** **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 55, and on those grounds, denies generally and specifically each and every allegation contained therein.**

56. Specifically, during a 59 second period of time, Defendant King activated his TASER for 53 seconds.

**ANSWER:** **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 56, and on those grounds, denies generally and specifically each and every allegation contained therein.**

57. The X26 TASER is designed to affect the sensory and motor nervous systems, overriding the central nervous system, and causing uncontrollable muscle contractions that make it physically impossible for a person exposed to the X26 TASER to not respond to its effects.

1   **ANSWER:   TASER admits that the X26 CEW is designed to impair muscle control**
2   **and incapacitate the subject.   TASER denies generally and specifically the**
3   **remaining allegations in Paragraph 57 and denies liability.**

4   58.   Defendant TASER® International failed to warn Defendant City that the
5   TASER in question is a deadly weapon.

6   **ANSWER:   TASER denies generally and specifically the allegations in Paragraph**
7   **58 of the Complaint and denies liability.**

8   59.   In the alternative, Defendant City ignored Defendant TASER®
9   International's warning that the TASER in question is a deadly weapon, and failed to
10   adopt a proper policy and provide proper training governing its use.

11   **ANSWER:   TASER denies that it failed to provide adequate warnings regarding**
12   **the X26 CEW. TASER lacks sufficient information or belief to enable TASER to**
13   **answer the remaining allegations in Paragraph 59, and on those grounds, denies**
14   **generally and specifically each and every remaining allegation contained therein.**

15   60.   In the further alternative, the Individual Defendants ignored the Defendant
16   City's TASER policy and related training.

17   **ANSWER:   TASER is not a party to Paragraph 60 of the Complaint.  To the extent**
18   **that these allegations can be construed as applied to TASER and a response is**
19   **required, TASER lacks sufficient information or belief to enable TASER to answer**
20   **Paragraph 60, and on those grounds, denies generally and specifically each and**
21   **every allegation contained therein.**

22   61.   Defendant TASER® failed to sufficiently warn Defendant City that
23   Defendant TASER® had knowledge that deploying the TASER into the left chest
24   increases the risk of death.

25   **ANSWER:   TASER denies generally and specifically the allegations in Paragraph**
26   **61 of the Complaint and denies liability.**

27   62.   In the alternative, Defendant City ignored Defendant TASER®'s  warning
28   that deploying the TASER into the left chest increases the risk of death, and failed to

adopt a policy prohibiting the deployment of the TASER into the left chest when the use of deadly force is not lawful and justified, and failed to train the Individual Defendants accordingly.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 62, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

63.    In the further alternative, the Individual Defendants ignored Defendant City's TASER policy and training.

**ANSWER:    TASER is not a party to Paragraph 63 of the Complaint.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 63, and on those grounds, denies generally and specifically each and every allegation contained therein.**

64.    Defendant TASER® failed to sufficiently warn Defendant City that the repeat cycling of the TASER and/or prolonged exposure to the TASER increases the risk of death.

**ANSWER:    TASER denies generally and specifically the allegations in Paragraph 64 of the Complaint and denies liability.**

65.    In the alternative, Defendant City ignored Defendant TASER®'s warning that the repeat cycling of the TASER and/or prolonged exposure to the TASER increases the risk of death, and failed to adopt a proper policy and provide proper training Individual Defendants governing its use.

**ANSWER:    TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 65, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

66.    In the further alternative, the Individual Defendants ignored the Defendant City's TASER policy and related training.

**ANSWER:    TASER is not a party to Paragraph 66 of the Complaint.  To the extent**

**that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 66, and on those grounds, denies generally and specifically each and every allegation contained therein.**

67.     Defendant TASER® International failed to sufficiently warn Defendant City that there is an increased risk of death when using a TASER on persons suffering from certain types of drug intoxication.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 67 of the Complaint and denies liability.**

68.     In the alternative, Defendant City ignored Defendant TASER®'s warning that there is an increased risk of death when using a TASER on persons suffering from certain types of drug intoxication, and failed to adopt a proper policy and provide proper training to the Individual Defendants governing its use.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 68, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

69.     In the further alternative, the Individual Defendants ignored the Defendants City's TASER policy and related training.

**ANSWER:   TASER is not a party to Paragraph 69 of the Complaint.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 69, and on those grounds, denies generally and specifically each and every allegation contained therein.**

70.     Defendant TASER® failed to sufficiently warn Defendant City that there is an increased risk of death when using a TASER on persons who are being choked.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 70 of the Complaint and denies liability.**

71.     In the alternative, Defendant City ignored Defendant TASER®'s warning

that there is an increased risk of death when using a TASER on persons who are being choked, and failed to adopt a proper policy and provide proper training to the Individual Defendants governing its use.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 71, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

72.    In the further alternative, the Individual Defendants ignored the Defendant City's TASER policy and related training.

**ANSWER:   TASER is not a party to Paragraph 72 of the Complaint.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 72, and on those grounds, denies generally and specifically each and every allegation contained therein.**

73.    Defendant TASER® failed to sufficiently warn Defendant City that there is an increased risk of death when using a TASER on persons who are being physically restrained on their stomachs, on a hard surface, while being handcuffed behind their back and/or hogtied.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 73 of the Complaint and denies liability.**

74.    In the alternative, Defendant City ignored Defendant TASER®'s warning that there is an increased risk of death when using a TASER on persons who are being physically restrained on their stomachs, on a hard surface, while being handcuffed behind their back and/or hogtied, and failed to adopt a proper policy and related training to the Individual Defendants governing its use.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 74, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

75.    In the further alternative, the Individual Defendants ignored the Defendant

City's TASER Policy and related training.

**ANSWER:   TASER is not a party to Paragraph 75 of the Complaint.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 75, and on those grounds, denies generally and specifically each and every allegation contained therein.**

76.   Defendant City failed to adopt a proper policy and provide proper training governing the use of carotid or other choke holds.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 76, and on those grounds, denies generally and specifically each and every allegation contained therein.**

77.   In the alternative, the Individual Defendants ignored the Defendant City's policy and training related to the use of carotid or other choke holds.

**ANSWER:   TASER is not a party to Paragraph 77 of the Complaint.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 77, and on those grounds, denies generally and specifically each and every allegation contained therein.**

78.   Defendant City failed to adopt a proper policy and provide proper training governing the use of knee strikes to the ribs or other body parts.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 78, and on those grounds, denies generally and specifically each and every allegation contained therein.**

79.   In the alternative, the Individual Defendants ignored the Defendant City's policy and training related to the use of knee strikes.

**ANSWER:   TASER is not a party to Paragraph 79 of the Complaint.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable TASER to answer**

1   **Paragraph 79, and on those grounds, denies generally and specifically each and**
2   **every allegation contained therein.**

3       80.    Defendant City failed to adopt a proper policy and provide proper training
4   governing the use of hogties or similar restraint devices.

5   **ANSWER:**  **TASER lacks sufficient information or belief to enable TASER to**
6   **answer Paragraph 80, and on those grounds, denies generally and specifically each**
7   **and every allegation contained therein.**

8       81.    In the alternative, the Individual Defendants ignored the Defendant City's
9   policy and training related to the use of hogties or similar restraint devices.

10   **ANSWER:**  **TASER is not a party to Paragraph 81 of the Complaint.  To the extent**
11   **that these allegations can be construed as applied to TASER and a response is**
12   **required, TASER lacks sufficient information or belief to enable TASER to answer**
13   **Paragraph 81, and on those grounds, denies generally and specifically each and**
14   **every allegation contained therein.**

15       82.    The TASER's electrical current causes severe muscle contractions, which
16   in turn causes the muscles to secrete lactic acid into the blood.

17   **ANSWER:**  **TASER denies generally and specifically the allegations in Paragraph**
18   **82 of the Complaint and denies liability.**

19       83.    If the body cannot compensate for the increasing metabolic acidosis,
20   cardiac arrest will occur.

21   **ANSWER:**  **TASER denies generally and specifically the allegations in Paragraph**
22   **83 of the Complaint and denies liability.**

23       84.    Medical records indicate that at the time of death, Mr. Sanchez's lactic acid
24   level was elevated to 39.9, which is not consistent with life.

25   **ANSWER:**  **TASER lacks sufficient information or belief to enable TASER to**
26   **answer Paragraph 84, and on those grounds, denies generally and specifically each**
27   **and every allegation contained therein.**

28       85.    The treating physician at the John C. Lincoln Hospital stated in the Medical

records that "Cause of death could possibly be from the taser incident and/or the chokehold or some unbeknownst trauma that is not apparent to me at this time."

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 85, and on those grounds, denies generally and specifically each and every allegation contained therein.**

86.   On the left chest, the Medical Examiner located "two pinpoint black defects that measure 1/16 inch in diameter each (and one of them possibly has a very small faint gray metallic barb within its depth)."

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 86, and on those grounds, denies generally and specifically each and every allegation contained therein.**

87.   Internal examination during an autopsy did not reveal significant evidence of gross lethal natural disease processes.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 87, and on those grounds, denies generally and specifically each and every allegation contained therein.**

88.   Moreover, Mr. Sanchez's heart appeared to be healthy.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 88, and on those grounds, denies generally and specifically each and every allegation contained therein.**

89.   The Medical Examiner issued the following diagnoses:

I.   Sudden adult death associated with being subdued while acutely intoxicated with methamphetamine and ethanol.

A. Became unresponsive while being subdued by law enforcement.

1. Electrical discharge device used.

2. Carotid choke hold used, reportedly.

a.   Bilateral neck hemorrhages, mild.

b.   Bony structures of the neck are without fracture.

21

B.  Toxicology testing detected methamphetamine and ethanol.

II.     Other blunt force injuries.

A.  Abrasions, contusions, and a few lacerations over the skin surfaces.

B.  Subgaleal hemorrhage.

C.  Subdural hemorrhage, mild (less that 10 mL in aggregate).

D.  Right-sided rib fractures, three.

**ANSWER:   TASER responds that the Medical Examiner's report speaks for itself. To the extent that the allegations in Paragraph 89 of the Complaint paraphrases or interprets the Medical Examiner's report, TASER denies each allegation and denies liability.**

90.     The Medical Examiner issued the following cause of death: "Sudden adult death associated with being subdued while acutely intoxicated with methamphetamine and ethanol."

**ANSWER:   The Medical Examiner's report speaks for itself. To the extent that the allegations in Paragraph 90 of the Complaint paraphrases or interprets the Medical Examiner's report, TASER denies each allegation and denies liability.**

91.     The Defendant City has an established policy, practice, or custom of permitting police officers to use TASERs on subjects who do not present any threat to anyone.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 91, and on those grounds, denies generally and specifically each and every allegation contained therein.**

92.     In this regard, prior to the incident in question, after completing an analysis of the Phoenix Police Department use-of-force reports, *The Arizona Republic* found 377 incidents involving the use of a TASER.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to**

1  **answer Paragraph 92, and on those grounds, denies generally and specifically each**
2  **and every allegation contained therein.**

3      93.     It was reported that in nearly nine out of ten of the incidents, the subjects
4  had posed no imminent threat with any weapons to police officers.

5  **ANSWER:  TASER lacks sufficient information or belief to enable TASER to**
6  **answer Paragraph 93, and on those grounds, denies generally and specifically each**
7  **and every allegation contained therein.**

8      94.     By way of example only: A shoplifter who stole four cans of soup from a
9  Food City and then fled on a bike was TASERed as officers dragged him to the ground;
10  a 15-year-old boy at Alhambra High School was TASERed in the back as officers
11  attempted to arrest him on a marijuana charge; and an intoxicated man who ignored
12  commands to leave a bar was TASERed in the back as he walked away.

13  **ANSWER:  TASER lacks sufficient information or belief to enable TASER to**
14  **answer Paragraph 94, and on those grounds, denies generally and specifically each**
15  **and every allegation contained therein.**

16      95.     Similarly, Mr. Sanchez did not pose a threat to anyone when he was
17  TASERed.

18  **ANSWER:  TASER lacks sufficient information or belief to enable TASER to**
19  **answer Paragraph 95, and on those grounds, denies generally and specifically each**
20  **and every allegation contained therein.**

21      96.     It is believed and therefore averred that prior to the incident in question,
22  other persons who did not present a threat to police officers or others had been subjected
23  to excessive force and/or choked to death by officers of the Defendant City.

24  **ANSWER:  TASER lacks sufficient information or belief to enable TASER to**
25  **answer Paragraph 96, and on those grounds, denies generally and specifically each**
26  **and every allegation contained therein.**

27      97.     In 2008, Defendant Brookins applied to the Phoenix Police Department.
28  **ANSWER:  TASER lacks sufficient information or belief to enable TASER to**

1  **answer Paragraph 97, and on those grounds, denies generally and specifically each**
2  **and every allegation contained therein.**

3  98.    Upon information and belief, the Defendant City knew that Defendant
4  Brookins had previously and recently failed a psychological exam in connections with an
5  application to become a police officer at another Police Department in Arizona.

6  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
7  **answer Paragraph 98, and on those grounds, denies generally and specifically each**
8  **and every allegation contained therein.**

9  99.    Despite knowledge of the failed psychological exam, the Defendant City
10  hired Defendant Brookins, armed him, provided him with police authority, and permitted
11  him to respond to citizens' requests for police services.

12  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
13  **answer Paragraph 99, and on those grounds, denies generally and specifically each**
14  **and every allegation contained therein.**

15  100.    During the Defendants City's interview and employment process, the
16  Defendant City received notice of issues calling Defendant Brookins fitness and ability
17  to serve as a police officer into question.

18  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
19  **answer Paragraph 100, and on those grounds, denies generally and specifically each**
20  **and every allegation contained therein**.

21  101.    After the Defendant City hired Defendant Brookins, the Defendant City
22  received notice that Brookins had posted multiple disturbing comments on a Facebook
23  page, which in light of his job responsibilities, called Defendant Brookins' judgment,
24  mental health, and emotional stability, into question.

25  **ANSWER:   TASER lacks sufficient information or belief to enable TASER to**
26  **answer Paragraph 101, and on those grounds, denies generally and specifically each**
27  **and every allegation contained therein.**

28  102.    These red flag comments, which the Defendant City essentially ignored,

foreshadowed the unlawful violence that would occur.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 102, and on those grounds, denies generally and specifically each and every allegation contained therein.**

103.   Upon information and belief, Defendant Brookins' Facebook comments included:

- God grant me the serenity to accept the thing I cannot shoot,

  The courage to shoot the things I can,

  And the wisdom to hide the rest.

- What a nice day…..I should kill something.

- Tired….Hope no one pushes my buttons. LMAO.

- How many cops does it take to get a suspect downstairs? None, he Fell.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 103, and on those grounds, denies generally and specifically each and every allegation contained therein.**

104.   To date, the Defendant City has been placed on notice of numerous instances involving Defendant Brookins' use of unlawful force while performing as a police officer for the Defendant City.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 104, and on those grounds, denies generally and specifically each and every allegation contained therein.**

105.   Such instances have included but are not limited to a 2012 incident wherein Brookins grabbed a female detainee causing physical injury, and dragged her through a puddle of urine; a 2013 fatal shooting of an unarmed mentally ill man who was being restrained by four other police officers; and the instant matter.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 105, and on those grounds, denies generally and specifically each and every allegation contained therein.**

106.   Despite knowing of such incidents, the Defendant City failed to properly investigate the incidents, and failed to take any action to ensure that Defendant Brookins would be criminally prosecuted.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 106, and on those grounds, denies generally and specifically each and every allegation contained therein**.

107.   The Defendant City failed to issue Defendant Brookins appropriate discipline and/or corrective training.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 107, and on those grounds, denies generally and specifically each and every allegation contained therein.**

108.   The Defendant City failed to provide Defendant Brookins with proper oversight and supervision.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 108, and on those grounds, denies generally and specifically each and every allegation contained therein.**

109.   The Defendant City failed to send Defendant Brookins for further psychological evaluation and/or provide him with necessary psychological or psychiatric treatment.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 109, and on those grounds, denies generally and specifically each and every allegation contained therein.**

110.   Instead, the Defendant City internally and publicly commended Defendant Brookins for his conduct.

**ANSWER:  TASER lacks sufficient information or belief to enable TASER to answer Paragraph 110, and on those grounds, denies generally and specifically each and every allegation contained therein.**

111.   Moreover, when sued for his conduct, despite not being required to do so,

the Defendant City has agreed to defend Defendant Brookins, and to provide Defendant Brookins with his own private civil attorney paid for by the Defendant City and/or its insurer.

**ANSWER:**  **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 111, and on those grounds, denies generally and specifically each and every allegation contained therein.**

112.   The Defendant City's aforementioned failures created, encouraged, enforced, and maintained a culture where excessive force was permitted and expected.

**ANSWER:**  **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 112, and on those grounds, denies generally and specifically each and every allegation contained therein**

113.   Despite the fact that disease and/or other medical conditions did not cause Mr. Sanchez's, but rather a combination of TASERing, choking, and other trauma inflicted by the Individual Defendants caused Mr. Sanchez's death, the Defendant City did not properly report Mr. Sanchez's death as a homicide to the Federal Bureau of Investigation ("FBI") as required, so that the death would be properly recorded in the Uniform Crime Reports.

**ANSWER:**  **TASER denies that exposure to a TASER X26 CEW caused or contributed to decedent's death.  TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 113, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

114.   The Defendant City's failure to properly report Mr. Sanchez's death to the FBI was likely an attempt to shield the incident and resulting death from the scrutiny of the United States Department of Justice ("DOJ").

**ANSWER:**  **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 114, and on those grounds, denies generally and specifically each and every allegation contained therein**

27

115.   Defendant TASER® is engaged in the business of manufacturing, distributing and selling electrical control devices ("ECDs") to law enforcement agencies throughout the United States, as well as replacement cartridges for the continuing use of said products.

**ANSWER:   TASER admits that it manufactures, distributes and sells CEWs and cartridges to law enforcement agencies in the United States.**

116.   In connection with the original sale, and to promote and encourage ongoing sales, Defendant TASER® makes representations regarding the potential risks and medical safety of its ECDs, including the model X26 TASER, and provides training and training materials for law enforcement agencies to use in instructing their officers in the purported safe use of its products.

**ANSWER:   TASER admits that it provides CEW product warnings and training materials, and also offers training courses to its law enforcement customers. TASER denies generally and specifically the remaining allegations in Paragraph 116 of the Complaint.**

117.   Defendant TASER®'s marketing campaign has always been that TASERs are a safe alternative to the use of lethal force.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 117 of the Complaint and denies liability.**

118.   In this regard, the company's slogan, 'Saving Lives Every Day,' is displayed on Defendant TASER® corporate headquarters in Scottsdale, Arizona.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 118 of the Complaint and denies liability.**

119.   Defendant TASER® changed its weapon's propellant from gunpowder to nitrogen, which permitted the company to escape regulation from the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and to avoid testing by the Consumer Products Safety Commission.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph**

119 of the Complaint and denies liability.

120.   Defendant TASER® sold ECDs, including the model X26 TASER in question, to Defendant City and has provided training materials to Defendant City from the date of the original sale until the present day, in connection with those sales.

**ANSWER:   TASER admits that it has provided CEW product manuals, warning and training materials to the City of Phoenix. TASER denies generally and specifically the remaining allegations in Paragraph 120 of the Complaint.**

121.   Defendant TASER® knows that law enforcement agencies such as the Phoenix Police department do not independently research medical risks posed by ECDs like the model X26 TASER but instead rely on medical, training, and safety information provided by Defendant TASER®.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 121 of the Complaint and denies liability.**

122.   When Defendant TASER® International introduced its products like the model X26 TASER into the market in 1999, Defendant TASER® represented that its products did not affect heart rhythms in humans.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 122 of the Complaint and denies liability.**

123.   However, in or around 2007, Defendant TASER®  became aware that its products like the model X26 TASER could cause a negative effect on a person's heart, i.e., capture, pacing, rate, and/or rhythm.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 123 of the Complaint and denies liability.**

124.   Defendant TASER® knew that its products, like the model X26 TASER, could cause fibrillation, tachycardia, and/or cardiac arrest.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 124 of the Complaint and denies liability.**

125.   Defendant TASER® International, however, waited until October 12, 2009,

to issue a statement, which provided in relevant part, the following:

> Should Sudden Cardiac Arrest occur in a scenario involving a TASER® discharge to the chest area – it would place the law enforcement agency, the officer, and TASER® International in the difficult situation of trying to ascertain what role, if any, the TASER® ECD could have played in a unique situation that cannot be replicated in human clinical safety evaluations. In order to reduce the risk of such an event, and in light of the fact that frontal applications of TASER® ECD's have been found to be more effective when the probes are targeted at the lower torso (engaging the balancing muscles of the pelvic triangle) we have lowered the recommended point of aim from the center of mass to the lower center of mass for frontal discharges. We believe this recommendation will improve the effective use of TASER® ECDs while also further increasing safety margins and enhancing the ability to defend such cases in pose event legal proceedings[.]

**ANSWER: TASER's product warnings and training bulletins speak for themselves. To the extent that the allegations in Paragraph 125 of the Complaint paraphrases or interprets the product warnings or training bulletins, TASER denies each allegation and denies liability.**

126.   TASER then lowered the preferred target area for frontal shots from center of mass to lower-center of mass, providing three reasons for the change:

A.  Simplify targeting for all TASER® systems to one easy to remember map, avoiding chest shots when possible and the risk of a head/eye shot in a dynamic situation, as is standard for impact munitions.

B.  When possible, avoiding chest shots with ECDs avoid that controversy about whether ECDs do or do not affect the human heart.

C.  Close-spread ECD discharges to the front of the body are more effective when at least one probe is in the major muscles of the pelvic triangle or thigh region.

**ANSWER: TASER's product warnings and training bulletins speak for themselves. To the extent that the allegations in Paragraph 126 of the Complaint**

1 **paraphrases or interprets the product warnings or training bulletins, TASER denies**

2 **each allegation and denies liability.**

3        127.    In a follow up release to customer, TASER® clarified that it is trying to

4 minimize the risk of defending death cases involving the device where that probes are in

5 close proximity to the heart.

6 **ANSWER:    TASER denies generally and specifically the allegations in Paragraph**

7 **127 of the Complaint and denies liability.**

8        128.    Moreover, it is believed and therefore averred that Defendant TASER®

9 became aware that its products, like the model X26 TASER, could have a negative effect

10 on neuropathological mechanisms.

11 **ANSWER:    TASER denies generally and specifically the allegations in Paragraph**

12 **128 of the Complaint and denies liability.**

13        129.    Specifically, it is believed and therefore averred that the electrical current

14 from a TASER can overload the brain electrically to the point that it cannot compensate

15 adequately for the sudden surge in energy.

16 **ANSWER:    TASER denies generally and specifically the allegations in Paragraph**

17 **129 of the Complaint and denies liability.**

18        130.    As a result, the neurons of the brain begin to misfire, creating

19 mechanoporation, which is the brain's equivalent of ventricular fibrillation.

20 **ANSWER:    TASER denies generally and specifically the allegations in Paragraph**

21 **130 of the Complaint and denies liability.**

22        131.    Essentially, the brain shuts off, and in doing so, shuts off all other systems

23 of the body, including the heart and lungs.

24 **ANSWER:    TASER denies generally and specifically the allegations in Paragraph**

25 **131 of the Complaint and denies liability.**

26        132.    Up and until the date of the incident in question, Defendant TASER®'s

27 training programs and literature failed to fully and properly incorporate or communicate

28 the available medical studies regarding the dangers of their products.

1  **ANSWER:**   **TASER denies generally and specifically the allegations in Paragraph**
2  **132 of the Complaint and denies liability.**

3      133.   To the contrary, Defendant TASER® continued to represent to law
4  enforcement and the public that its products are a less than lethal weapon.

5  **ANSWER:**   **TASER denies generally and specifically the allegations in Paragraph**
6  **133 of the Complaint and denies liability.**

7      134.   Defendant TASER® knows that the model X26 TASER causes stress on
8  the body, which can result in physical injury or death.

9  **ANSWER:**   **TASER cannot admit or deny that its X26 CEW may cause "stress" on**
10  **the human body as that term is not adequately defined in the allegation.  TASER's**
11  **product warnings speak for themselves. TASER denies generally and specifically**
12  **the remaining allegations in Paragraph 134 of the Complaint and denies liability.**

13      135.   The model X26 TASER is designed to shut off after a preprogrammed
14  amount of time (5 second cycle).

15  **ANSWER:**   **TASER admits that the X26 CEW has a standard 5-second trigger**
16  **cycle.**

17      136.   Despite knowing the substantial medical risks associated with continued
18  exposure, Defendant TASER® designed that model X26 TASER so that the
19  preprogrammed amount of cycle time can easily be overridden by the user (which
20  occurred in this incident).

21  **ANSWER:**   **TASER denies generally and specifically the allegations in Paragraph**
22  **136 of the Complaint and denies liability.**

23      137.   Defendant TASER® continues to ignore the related dangers of designing
24  its products like the model X26 TASER to permit the user to override the preset cycle
25  time, while knowing that its products are being regularly misused in the field by law
26  enforcement personnel.

27  **ANSWER:**   **TASER denies generally and specifically the allegations in Paragraph**
28  **137 of the Complaint and denies liability.**

138.    Defendant TASER®'s model X26 TASER is no less lethal than a gun – if it is fired into the left chest it will likely kill – of it is fired into the foot it will not kill.

**ANSWER:    TASER denies generally and specifically the allegations in Paragraph 138 of the Complaint and denies liability.**

**COUNT I**
**Plaintiff v. Individual Defendants**
**Fourth Amendment – Excessive Force**
**(pursuant to 42 U.S.C. §1983)**

139.    Paragraphs 1 -118 are stated herein by reference.

**ANSWER:    TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

140.    Pursuant to the Fourth Amendment of the U.S. Constitution, police officers enjoy a privilege to use objectively reasonable force to effect a lawful arrest.

**ANSWER:    TASER is not a party to Paragraph 140 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 140, and on those grounds, denies generally and specifically each and every allegation contained therein.**

141.    Despite the fact that the Individual Defendants were not presented with the threat of serious injury or death, they provoked the need to use force, and in fact used deadly force, against Mr. Sanchez in the form of 53 seconds of TASER strikes to the left chest in a 59 second period of time; knee strikes to the ribs that broke and bruised ribs; pressure to the neck, airway, and carotid artery that limited or cut off air and blood flow; and hogtying and handcuffing while lying face-down on a hard surface

**ANSWER:    TASER is not a party to Paragraph 141 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that**

33

**the TASER X26 CEW caused or contributed to decedent's death. TASER lacks sufficient information or belief to enable it to answer the remaining allegations in Paragraph 141, and on those grounds, denies generally and specifically each and every allegation contained therein.**

142.    The force used by the Individual Defendants to effect the arrest Mr. Sanchez was excessive, and therefore, unlawful.

**ANSWER:    TASER is not a party to Paragraph 142 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 142, and on those grounds, denies generally and specifically each and every allegation contained therein.**

143.    The unlawful force used against Mr. Sanchez was for the purpose of inflicting pain, physical injury, torture, and punishment.

**ANSWER:    TASER is not a party to Paragraph 143 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 143, and on those grounds, denies generally and specifically each and every allegation contained therein.**

144.    The use of a TASER merely to obtain behavior compliance, when there is no associated threat to anyone, is not lawful and not in accordance with accepted police practices.

**ANSWER:    TASER is not a party to Paragraph 144 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 144, and on those grounds, denies generally and specifically each and every allegation contained**

therein.

145.   Each ECD cycle, or five (5) seconds of discharge, must be objectively reasonable, which in this case, they were not.

**ANSWER:   TASER is not a party to Paragraph 145 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 145, and on those grounds, denies generally and specifically each and every allegation contained therein.**

146.   A the time when the force was used, all four Individual Defendants were present, Mr. Sanchez did not pose an immediate threat to anyone, and Mr. Sanchez had not committed any serious and/or violent crimes.

**ANSWER:   TASER is not a party to Paragraph 146 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 146, and on those grounds, denies generally and specifically each and every allegation contained therein.**

147.   Moreover, the Individual Defendants knew or should have known that as a result of Mr. Sanchez's medical condition and state of mind, he could not comply with the Individual Defendants' commands.

**ANSWER:   TASER is not a party to Paragraph 147 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 147, and on those grounds, denies generally and specifically each and every allegation contained therein.**

148.   The Individual Defendants were required to move in quickly to handcuff

and otherwise restrain Mr. Sanchez, so as to avoid the need for excess cycling of the TASER, but failed to do so.

**ANSWER:   TASER is not a party to Paragraph 148 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 148, and on those grounds, denies generally and specifically each and every allegation contained therein.**

149.    Therefore, multiple ECD cycles or five (5) seconds of discharge cannot be legally justified solely on the basis that Mr. Sanchez allegedly failed to comply with the Individual Defendants' commands.

**ANSWER:   TASER is not a party to Paragraph 149 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 149, and on those grounds, denies generally and specifically each and every allegation contained therein.**

150.    The Individual Defendants were not trained to use knee strikes to the ribs but were permitted by the Defendant City to do so.

**ANSWER:   TASER is not a party to Paragraph 150 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 150, and on those grounds, denies generally and specifically each and every allegation contained therein.**

151.    The Individual Defendants were not trained to use carotid artery and/or neck choking but were permitted by the Defendant City to do so.

**ANSWER:   TASER is not a party to Paragraph 151 of the Complaint and does not**

**respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 151, and on those grounds, denies generally and specifically each and every allegation contained therein.**

152.     Despite the medical dangers associated with same and the fact that hogtying a person is not an acceptable or safe means or restraint (especially while the person is face-down on a hard surface, intoxicated, and/or excited), it is believed and therefore averred that the Individual Defendants hogtied Mr. Sanchez.

**ANSWER:     TASER is not a party to Paragraph 152 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 152, and on those grounds, denies generally and specifically each and every allegation contained therein.**

153.     The force used by the Individual Defendants against Mr. Sanchez violated the Fourth Amendment to the U.S. Constitution.

**ANSWER:     TASER is not a party to Paragraph 153 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 153, and on those grounds, denies generally and specifically each and every allegation contained therein.**

154.     The Individual Defendants engaged in their conduct with a complete disregard for the value of Mr. Sanchez's human life.

**ANSWER:     TASER is not a party to Paragraph 154 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks**

sufficient information or belief to enable it to answer Paragraph 154, and on those grounds, denies generally and specifically each and every allegation contained therein.

155. As a direct and proximate cause of the Individual Defendants' actions, Mr. Sanchez suffered immense physical pain, humiliation, fear, physical injuries, and death.

**ANSWER:** **TASER is not a party to Paragraph 155 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that the TASER X26 CEW caused or contributed to decedent's death. TASER lacks sufficient information or belief to enable it to answer Paragraph 155, and on those grounds, denies generally and specifically each and every allegation contained therein.**

**COUNT II**
**Plaintiff v. Individual Defendants**
**Fourteenth Amendment – Denial of Medical Care**
**(pursuant to 42 U.S.C. § 1983)**

156. Paragraphs 1-155 are stated herein by reference.

**ANSWER:** **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

157. Mr. Sanchez was a pretrial detainee in the custody of the Individual Defendants.

**ANSWER:** **TASER is not a party to Paragraph 157 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 157, and on those grounds, denies generally and specifically each and every allegation contained therein.**

158. While a pretrial detainee, the Individual Defendants had a duty to protect

Mr. Sanchez and to attend to his medical needs.

**ANSWER:   TASER is not a party to Paragraph 158 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 158, and on those grounds, denies generally and specifically each and every allegation contained therein.**

159.   The Individual Defendants, however, knew of but ignored Mr. Sanchez's serious medical needs associated with drug intoxication, being hit by a car, a decreased level of consciousness, and being TASERed and choked.

**ANSWER:   TASER is not a party to Paragraph 159 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 159, and on those grounds, denies generally and specifically each and every allegation contained therein.**

160.   As a direct and proximate cause of the Individual Defendants' actions, Mr. Sanchez suffered immense physical pain, humiliation, fear, physical injuries, and death.

**ANSWER:   TASER is not a party to Paragraph 160 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that the TASER CEW caused or contributed to decedent's death and TASER lacks sufficient information or belief to enable it to answer Paragraph 160, and on those grounds, denies generally and specifically each and every allegation contained therein.**

**<u>COUNT III</u>**
**Plaintiff Estate v. Defendant City of Phoenix, Arizona**
**Fourth/Fourteenth Amendment – Municipal Liability**
**(pursuant to 42 U.S.C. § 1983)**

161.   Paragraphs 1-160 are incorporated herein by reference.

**ANSWER:   TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

162.   "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged  to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658.690 (1978).

**ANSWER:   TASER is not a party to Paragraph 162 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 162, and on those grounds, denies generally and specifically each and every allegation contained therein.**

163.   Policymakers of the Defendant City either participated in, authorized, or acquiesced in, the unlawful conduct discussed herein, adopted, implemented, and enforced, policies and practices that comport with state and federal law.

**ANSWER:   TASER is not a party to Paragraph 163 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 163, and on those grounds, denies generally and specifically each and every allegation contained therein.**

164.   The Defendant City maintained policies, practices, and customs, which were the moving force that resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:   TASER is not a party to Paragraph 164 of the Complaint and does not**

**respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 164, and on those grounds, denies generally and specifically each and every allegation contained therein.**

165.    The Defendant City knew that Defendant Brookins was mentally ill and/or unstable and prone to the use of unlawful force and violence before the City hired him but the City hired him anyway.

**ANSWER:   TASER is not a party to Paragraph 165 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 165, and on those grounds, denies generally and specifically each and every allegation contained therein.**

166.    During his employments, the defendant City discovered further credible evidence that Defendant Brookins was mentally ill and/or unstable, and that his mental health was deteriorating, but the Defendant City took no action to protect its citizens from Defendant Brookins.

**ANSWER:   TASER is not a party to Paragraph 166 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 166, and on those grounds, denies generally and specifically each and every allegation contained therein.**

167.    The existence of the Defendant City's unlawful policies, practices, and customs, are proven, in part, by post-event evidence, including but not limited to, the City's actions and/or inactions in response to (a) the 2012 incident wherein Brookins grabbed a female detainee causing physical injury and dragged her through a puddle of

urine; (b) the 2013 fatal shooting of an unarmed mentally ill man who was being restrained by four other police officers; and (c) the instant matter.

**ANSWER:   TASER is not a party to Paragraph 167 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 167, and on those grounds, denies generally and specifically each and every allegation contained therein.**

168.   In addition, before the incident in question, the Defendant City knew that its officers were using unlawful force on citizens but failed to take any action to correct the issue until it faced a threat in or around 2013 of intervention of the U.S. Department of Justice.

**ANSWER:   TASER is not a party to Paragraph 168 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 168, and on those grounds, denies generally and specifically each and every allegation contained therein.**

169.   The Defendant City knew that its police officers would regularly be in contact with persons who suffered from disabilities, including but not limited to drug addiction and mental illness, but failed to adopt proper policies and/or provide its officers with appropriate training, including but not limited to, training on the Americans with Disabilities Act.

**ANSWER:   TASER is not a party to Paragraph 169 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 169, and on those grounds, denies generally and specifically each and every allegation contained**

**therein.**

170.    The Defendant City knew that its police officers would regularly be in contact with persons wherein they may use force, including but not limited to knee strikes, choke holds, and ECDs, including TASERs, but failed to adopt proper policies or provide its officers with appropriate training, which resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:    TASER is not a party to Paragraph 170 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 170, and on those grounds, denies generally and specifically each and every allegation contained therein.**

171.    The Defendant City was on notice of physiological changes that occur in the human body as a result of being subjected to the use of an ECD, such as a TASER, but failed to adopt proper policies or provide its officers with appropriate training, which resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:    TASER is not a party to Paragraph 171 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that its X26 CEW caused or contributed to decedent's death. TASER lacks sufficient information or belief to enable it to answer the remaining allegations in Paragraph 171, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

172.    The Defendant City was on notice of tactical adjustments and considerations required to accommodate life-threatening physiological changes that occur in the human body as a result of being subjected to the use of an ECD, such as a TASER, but failed to adopt proper policies or provide its officers with appropriate training, which resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:   TASER is not a party to Paragraph 172 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that its X26 CEW causes life-threatening physiological changes or that it caused or contributed to decedent's death. TASER lacks sufficient information or belief to enable it to answer the remaining allegations in Paragraph 172, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

173.   The Defendant City was on notice of medical treatment required to address life-threatening physiological changes that occur in the human body as a result of being subjected to the use of an ECD, such as a TASER, but failed to adopt proper policies or provide its officers with appropriate training, which resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:   TASER is not a party to Paragraph 173 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that its X26 CEW causes life-threatening physiological changes or that it caused or contributed to decedent's death. TASER lacks sufficient information or belief to enable it to answer the remaining allegations in Paragraph 173, and on those grounds, denies generally and specifically each and every remaining allegation contained therein.**

174.   The Defendant City knew that its police officers would regularly be involved in situations implicating the Fourth and Fourth Amendments but failed to adopt proper policies or provide its officers with appropriate training, which resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:   TASER is not a party to Paragraph 174 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks**

**sufficient information or belief to enable it to answer Paragraph 174, and on those grounds, denies generally and specifically each and every allegation contained therein.**

175.   The Defendant City knew that its police officers would regularly be in contact with persons exhibiting aggressive behaviors and/or non-compliant behaviors, as the result of a medical condition, but failed to adopt proper policies or provide its officers with appropriate training, which resulted in Mr. Sanchez's constitutional and statutory rights being violated.

**ANSWER:   TASER is not a party to Paragraph 175 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 175, and on those grounds, denies generally and specifically each and every allegation contained therein.**

176.   The Defendant City failed to implement an effective process to ensure that policies and training of the Defendant City are followed by its police officers.

**ANSWER:   TASER is not a party to Paragraph 176 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 176, and on those grounds, denies generally and specifically each and every allegation contained therein.**

177.   It is believed that discovery will reveal, and therefore averred, that when it has been determined that officers have violated the constitutional or statutory rights of persons, or used unlawful force against persons, or when police officers have been named in citizen complaints, or when the Defendant City has settled civil lawsuits, the Defendant City has not required police officers to receive corrective or additional training.

**ANSWER:   TASER is not a party to Paragraph 177 of the Complaint and does not**

1  respond to the allegations contained therein. **To the extent that these allegations can**
2  **be construed as applied to TASER and a response is required, TASER lacks**
3  **sufficient information or belief to enable it to answer Paragraph 177, and on those**
4  **grounds, denies generally and specifically each and every allegation contained**
5  **therein.**

6  178.   It is believed that discovery will reveal, and therefore averred, that the
7  Defendant City did not follow its internal affairs policy and investigate, discipline, or
8  retain the Individual Defendants for the conduct discussed in this Complaint.

9  **ANSWER:  TASER is not a party to Paragraph 178 of the Complaint and does not**
10 **respond to the allegations contained therein.  To the extent that these allegations can**
11 **be construed as applied to TASER and a response is required, TASER lacks**
12 **sufficient information or belief to enable it to answer Paragraph 178, and on those**
13 **grounds, denies generally and specifically each and every allegation contained**
14 **therein.**

15 179.   If it is ultimately determined that an internal affairs investigation occurred,
16 it is believed that discovery will reveal, and therefore averred, that the investigation was
17 triggered as a result of a threat of civil litigation (so as to be a defense to the litigation),
18 as opposed to when the Defendant City first learned of the incident discussed herein.

19 **ANSWER:   TASER is not a party to Paragraph 179 of the Complaint and does not**
20 **respond to the allegations contained therein. To the extent that these allegations can**
21 **be construed as applied to TASER and a response is required, TASER lacks**
22 **sufficient information or belief to enable it to answer Paragraph 179, and on those**
23 **grounds, denies generally and specifically each and every allegation contained**
24 **therein.**

25 180.   The Defendant City's policies and practices caused the Plaintiffs to suffer
26 the constitutional and statutory injuries described herein.

27 **ANSWER:   TASER is not a party to Paragraph 180 of the Complaint and does not**
28 **respond to the allegations contained therein. To the extent that these allegations can**

**be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 180, and on those grounds, denies generally and specifically each and every allegation contained therein.**

181.   Moreover, it is believed that discovery will reveal, and therefore it is averred, that the Defendant City's policies and practices caused other persons to suffer similar constitutional and statutory injuries.

**ANSWER:   TASER is not a party to Paragraph 181 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 181, and on those grounds, denies generally and specifically each and every allegation contained therein.**

182.   Finally, it is believed that despite the fact that the statute of limitations for a § 1983 claim is two years, in an effort to avoid liability for wrongdoing, the Defendant City failed to implement an electronic document retention policy that ensures that all relevant and material documents are retained after 180 days.

**ANSWER:   TASER is not a party to Paragraph 182 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER lacks sufficient information or belief to enable it to answer Paragraph 182, and on those grounds, denies generally and specifically each and every allegation contained therein.**

183.   As a direct and proximate cause of the Individual Defendants' actions, Mr. Sanchez suffered immense physical pain, humiliation, fear, physical injuries, and death.

**ANSWER:   TASER is not a party to Paragraph 183 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to TASER and a response is required, TASER denies that**

**the TASER X26 CEW caused or contributed to decedent's death and TASER lacks sufficient information or belief to enable it to answer Paragraph 183, and on those grounds, denies generally and specifically each and every allegation contained therein.**

**COUNT IV**
**Plaintiff Estate v TASER®**
**Strict Products Liability**
**(pursuant to Arizona State Law)**

184.   Paragraphs 1-183 are stated herein by reference.

**ANSWER:   TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

185.   Arizona recognizes the strict liability of manufacturers and sellers of defective products that are unreasonably dangerous and cause physical harm to the consumer or his/her property.

**ANSWER:   The allegations in Paragraph 185 contain legal conclusions, to which no response is required. However, to the extent a response is required, TASER denies generally and specifically each and every allegation contained therein.**

186.   Defendant TASER® has an ongoing duty to use reasonable and ordinary care in providing truthful and up-to-date medical, training, and safety information in connection with the ongoing use of its products by various law enforcement agencies.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 186 of the Complaint and denies liability.**

187.   Defendant TASER® has a duty to manufacture safe products, which includes the duty to design its products, like the model X26 TASER, so that the cycle settings cannot be overridden by the user.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 187 of the Complaint and denies liability.**

188.   Defendant TASER® has a duty to stop selling its products or to

manufacture safer products after it is discovered that its products are being used improperly by law enforcement personnel.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 188 of the Complaint and denies liability.**

189.   Defendant TASER® has a further duty to provide sufficient warnings to inform its users and consumers of the medical risks associated with its product and how to avoid or minimize said risks, but has no duty to warn its users and customers about potential civil liability and how to avoid same.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 189 of the Complaint and denies liability.**

190.   Defendant TASER® International's failure to provide sufficient warnings and instructions, resulted in its products being defective.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 190 of the Complaint and denies liability.**

191.   Defendant TASER® knowingly misrepresented that its products are "less-lethal" despite knowing that its products are lethal.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 191 of the Complaint and denies liability.**

192.   As a direct and proximate result of the foregoing malicious, wanton, reckless, and negligent conduct, the Individual Defendants were not sufficiently warned or trained:

> a.   That the ECD in question is a *deadly* weapon;
>
> b.   That the ECD in question should only be used when the use of *deadly* force would be lawful and justified;
>
> c.   That the ECD in question should only be deployed into the chest when the use of *deadly* force would be lawful and justified;
>
> d.   On the medical dangers associated with extending the duration of the pulsing electrical current of the ECD in question beyond the pre-

programmed setting.

    e. To recognize symptoms associated with the buildup of lactic acid in the body during the use of the ECD in question, and how to respond medically to same.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 192 of the Complaint and denies liability.**

193. Defendant TASER®'s conduct was motivated by a desire to increase its profits with a complete disregard for the value of human life.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 193 of the Complaint and denies liability.**

194. Defendant TASER® consciously pursued a course of conduct for many years while knowing that it created a substantial risk of significant harm to others.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 194 of the Complaint and denies liability.**

195. Accordingly, Plaintiffs seek punitive damages in the maximum amount permitted by law.

**ANSWER:   TASER denies that Plaintiffs are entitled to any relief and TASER denies generally and specifically the remaining allegations in Paragraph 195 of the Complaint and denies liability.**

196. As a direct and proximate cause of the Individual Defendants' actions, Mr. Sanchez suffered immense physical pain, humiliation, fear, physical injuries, and death.

**ANSWER:   TASER denies that the TASER CEW caused or contributed to decedent's death and denies liability.  TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 196, and on those grounds, denies generally and specifically each and every allegation contained therein.**

**<u>COUNT V</u>**
**Plaintiffs Estate v. Defendants (except Defendant TASER®)**

**(pursuant to 42 U.S.C. § 1983)**
**Plaintiff Estate v Defendant TASER® (pursuant to Arizona State Law)**
**Survival Action**

197.   Paragraphs 1 – 196 are stated herein by reference.

**ANSWER:   TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

198.   Arizona's survival statue provides: "Every cause of action, except a cause of action for damages for breach of promise to marry, seductions, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed." A.R.S. § 14-3110.

**ANSWER:   TASER responds that A.R.S. § 14-3110 speaks for itself. To the extent that the allegations in Paragraph 198 of the Complaint paraphrases or interprets A.R.S. § 14-3110, TASER denies each allegation and denies liability.**

199.   Under Arizona's survival statute, "[t]he claim passes from the decedent to the personal representatives, and becomes an asset of the estate." Gandy v. United States, 437 F. Supp.2d. 1085, 1086 (D. Ariz. 2006) (citing Barragan v. Superior Court of Pima County, 12 Ariz. App. 402, 470 P.2d 722, 724 (Ariz. Ct. App. 1970)).

**ANSWER:   The allegations in Paragraph 199 contain legal conclusions, to which no response is required. However, to the extent a response is required, TASER states that the court's opinion in *Gandy v. United States* speaks for itself.  To the extent that the allegations in Paragraph 199 of the Complaint paraphrases or interprets the court's opinion, TASER denies each allegation and denies liability.**

200.   "' In § 1983 actions, …the Survivors of an individual killed as a result of an officer's excessive force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action."' Hayes v. County of San

Diego, 736 F. 3d 365, 369 (9th Cir. 1998)) (deletions in the original).

**ANSWER:   The allegations in Paragraph 200 contain legal conclusions, to which no response is required. However, to the extent a response is required, TASER states that the court's opinion in *Hayes v. County of San Diego* speaks for itself.   To the extent that the allegations in Paragraph 200 of the Complaint paraphrases or interprets the court's opinion, TASER denies each allegation and denies liability.**

201.   Therefore, Mr. Sanchez's state and federal claims in life survive his death.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 201 of the Complaint and denies liability.**

202.   Plaintiff Estate of Jorge E. Sanchez claims damages for the pain and suffering unlawfully caused Mr. Sanchez during the events in question until the time of his death.

**ANSWER:   TASER denies that Plaintiffs are entitled to any relief and TASER denies generally and specifically the remaining allegations in Paragraph 202 of the Complaint and denies liability.**

203.   Plaintiff Estate claims damages for the loss of his enjoyment of his life, and for the pain and suffering that led to his death. See, e.g., McClurg v. Maricopa Cnty., CIV-09-1684-PHX-MHB, 2011 U.S. Dist. LEXIS 108943, 2011 WL 4434029 (D. Ariz. Sept. 23, 2011); Bass v. Wallenstein, 769 F .2d 1173, 1190 (7th Cir. 1985).

**ANSWER:   TASER denies that Plaintiffs are entitled to any relief and TASER denies generally and specifically the remaining allegations in Paragraph 203 of the Complaint and denies liability.**

204.   As a direct and proximate cause of the Defendants' actions, Mr. Sanchez suffered immense physical pain, humiliation, fear, physical injuries, and death.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 204 of the Complaint and denies liability.**

## COUNT VI
**Plaintiffs (except Plaintiff Estate) v. Defendant TASER®**

**Wrongful Death**
**(Pursuant to Arizona State Law)**

205.   Paragraphs 1-204 are stated herein by reference.

**ANSWER:   TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

206.   Defendant TASER International's actions and products unlawfully caused the Plaintiffs' injuries and the decedent's death.

**ANSWER:   TASER denies generally and specifically the allegations in Paragraph 206 of the Complaint and denies liability.**

207.   There were no actions brought by the decedent on this cause of action in his lifetime, and none have been brought after his death apart from the present action.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 207, and on those grounds, denies generally and specifically each and every allegation contained therein.**

208.   Mr. Sanchez died intestate.

**ANSWER:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 208, and on those grounds, denies generally and specifically each and every allegation contained therein.**

209.   Plaintiffs bring this action as survivors and claims damages for pecuniary loss suffered by  reason of decedent's wrongful death, as well as for reimbursement for medical bills, funeral and cremation expenses, administrative expenses, and other expenses incident to his death, as well as the loss of services and financial care that he would have provided to them.

**ANSWER:   TASER denies that Plaintiffs are entitled to any relief and TASER denies generally and specifically the remaining allegations in Paragraph 209 of the Complaint and denies liability.**

210.   As a direct and proximate cause of the Defendant's actions, the survivor Plaintiffs suffered mental anguish and a loss of companionship, comfort, financial

support, and guidance.

**ANSWER:   TASER denies that Plaintiffs are entitled to any relief and TASER denies generally and specifically the remaining allegations in Paragraph 210 of the Complaint and denies liability.**

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in their favor as follows:

A.  That this Court declare that the Defendants' actions violated their constitutional and statutory rights;

B.  Compensatory damages including but not limited loss of companionship, comfort, financial support, and guidance caused by the death; and the survivor's emotional suffering.

C.  Punitive damages (except against Defendant City);

D.  Reasonable attorney's fees and costs;

E.  A jury trial; and,

F.  Such other financial or equitable relief as is reasonable and just.

**ANSWER:   TASER denies that Plaintiffs are entitled to any relief and TASER denies liability.**

## Jury Trial Demand

Plaintiffs respectfully request a trial by jury on all claims/issues in this matter that may be tried to a jury.

**ANSWER:  TASER also demands a trial by jury in the above-entitled matter of all issues so triable.**

## GENERAL DENIAL AND AFFIRMATIVE DEFENSES

To the extent TASER failed to specifically respond to any allegation by Plaintiffs in their Complaint, TASER denies the same and denies liability.

As for its affirmative defenses, and in order that TASER does not waive them, TASER alleges, upon information and belief, the following affirmative defenses:

1.      The Complaint fails to state a claim upon which relief may be granted.

2.     Upon information and belief, Plaintiffs lack capacity and standing to be a proper party to the action.

3.     Plaintiffs cannot meet the burden of proof as to the claims alleged in the Complaint.

4.     There was no negligence, fault, or culpable conduct on the part of Defendant causing the damages alleged in the Complaint.

5.     Defendant did not make any intentional or negligent misrepresentations regarding Defendant's products.

6.     The product in question was not defective and it was not in a condition inherently or unreasonably dangerous to the user.

7.     The product in question was reasonably safe for its intended use as designed when it left the possession of the manufacturer.

8.     Defendant provided appropriate, adequate and sufficient warnings and instructions regarding the use of its product.

9.     Defendant had no duty to warn, including under the sophisticated users or informed intermediary/purchaser doctrine.

10.    Any TASER products were at all material times consistent with industry customs, applicable standards, and available technological, scientific and industrial state-of-the-art.

11.    Any TASER products and warnings were at all material times state-of-the-art.

12.    The benefits of the challenged design of the products alleged in the Complaint outweigh any inherent risk of danger in the products.

13.    Defendant did not have, at all times relevant to the Complaint, actual or constructive knowledge of the alleged danger or risk inherent in the use of the products as alleged in the Complaint.

14.    Defendant bears no liability to the extent any injury to the Decedent was caused by misuse of Defendant's product.

15. Defendant bears no liability to the extent any injury to the Decedent was caused by alteration of Defendant's product.

16. Plaintiffs' claims against Defendant are barred in whole or in part for the reason that their damages, if any, were caused by an intervening and/or superseding cause.

17. Plaintiffs' claims against Defendant are barred in whole or in part because of the independent, intervening and superseding negligence of third parties whom Defendant had no control and with respect to whom it had no legal responsibility or liability.

18. Decedent and/or Plaintiffs may have failed to mitigate their alleged damages, thus barring or reducing recovery against Defendant, if any.

19. Plaintiffs' damages were caused, in whole or in part, by the comparative or contributory negligence of Decedent, one or more of the Plaintiffs, other persons or other entities.

20. Decedent was negligent in a manner proximately causing the incident with the City of Phoenix police officers in that he:

    a.  assumed the risk of his own injuries;

    b.  created the situation leading to his own injuries;

    c.  failed to take adequate precautions for his own safety;

    d.  acted with conscious indifference to his own safety and that of others around him; and/or

    e.  was otherwise negligent, reckless, willful or wanton in his actions as discovery may show.

21. Any claims against Defendant are barred, in whole or in part, by virtue of the Decedent having knowingly and voluntarily assumed and/or incurred the risk of physical injury.

22. Upon information and belief, the injuries to Decedent were the consequence of pre-existing medical or physical conditions.

23. Upon information and belief, the injuries to Decedent were the consequence of his being acutely intoxicated with methamphetamine and ethanol.

24. Upon information and belief, Plaintiffs' damages, if any, were proximately caused by the sensitivities and idiosyncrasies peculiar to Decedent, not found in the general public and not reasonably foreseeable to Defendant.

25. Defendant owed no duty to Decedent, a criminal suspect.

26. Defendant did not breach any duty owed by it to the Decedent.

27. There is no causal connection between injuries allegedly suffered by the Decedent and any action or inaction of Defendant.

28. Defendant affirmatively alleges the defense provided by Ariz. Rev. Stat. § 12-711.

29. Defendant affirmatively alleges the defense provided by Ariz. Rev. Stat. § 12-712.

30. Defendant affirmatively alleges the defense provided by Ariz. Rev. Stat. § 12-716.

31. Defendant affirmatively alleges any and all defenses available under Arizona State Codes and Statutes.

32. To the extent attorneys' fees are alleged against Defendant, the awarding of such fees against TASER is improper as alleged by Plaintiffs under federal and state law.

33. Upon information and belief Plaintiffs are not entitled to punitive damages under Arizona law.

34. The imposition of punitive damages Arizona law violates the Fourth, Fifth, Sixth, Eighth and Fourteenth amendments of the United States Constitution.

35. Defendant affirmatively alleges the defense provided by Ariz. Rev. Stat. § 12-689.

36. Defendant is entitled to offsets for any amounts recovered from other responsible parties or collateral sources.

**RESERVATION OF ADDITIONAL DEFENSES**

Defendant TASER reserves the right to plead as additional affirmative defenses, any of the items set forth in Rules 8(c) and 12, Fed.R.Civ.P., A.R.S. §§12-681, *et seq.,* any and all Arizona codes, statutes and case law precedent, and any other matter constituting an avoidance or affirmative defense as the same may be revealed during disclosure and/or discovery proceedings in this matter.

WHEREFORE, Defendant demands judgment dismissing the Complaint and decreeing that Plaintiffs take nothing by it, awarding Defendant its costs, attorneys' fees, and other and further relief as may be just and proper under the circumstances.

RESPECTFULLY SUBMITTED July 28, 2014.

TASER INTERNATIONAL, INC.


/s/ Holly Gibeaut

Holly Gibeaut
17800 N. 85th Street
Scottsdale, Arizona 85255-9603
*Attorneys for Defendant TASER International, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014, I electronically transmitted the attached document to the Clerk of the Court and all attorneys of record using the CM/ECF System for filing.

/s/ Holly Gibeaut