**WO**  NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| L Alicia Rascon, *et al.*, | No. CV-14-00749-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Clinton H Brookins, *et al.*, | |
| Defendants. | |

The Court considers Defendants Clinton H. Brookins, Jeremy King, Nicholas R. Welch, Steven Squire, and City of Phoenix's Joint Motion to Exclude Plaintiffs' Expert Randall C. Baselt, Ph.D. (Doc. 168, Baselt Mot.), Joint Motion to Exclude Medical Opinions from Plaintiffs' Police Expert Roger Clark (Doc. 169, Clark Mot.), Joint Motion to Exclude Plaintiffs' Expert Stan V. Smith, Ph.D. (Doc. 170, Smith Mot.), Joint Motion to Exclude Plaintiffs' Expert Michael M. Baden, M.D. (Doc. 172, Baden Mot.), Plaintiffs' Response (Doc. 207, Resp.), and Defendants' Reply (Doc. 213, Reply). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert*), 509 U.S. 579, 589 (1999). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. The trial court must first

assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593-94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

The *Daubert* analysis is applicable to testimony concerning non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire Co.*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

## II. ANALYSIS

### A. Randall C. Baselt, Ph.D.

Defendants move to exclude the testimony of the Plaintiffs' expert, Randall C. Baselt, because he is not qualified to offer opinions on issues other than methamphetamine and alcohol use, and his report fails to comply with *Daubert* reliability requirements. (Doc. 168, Baselt Mot. at 4, 9.) Plaintiffs contend that Dr. Baselt's opinion is reliable because he is an expert in toxicology which is "good science" and his opinion is relevant to the case. (Doc. 207, Resp. at 4.) Defendants concede that Dr. Baselt is qualified to opine about the decedent's level of methamphetamine intoxication. (Doc. 168, Baselt Mot. at 2.)

#### 1. Dr. Baselt's Qualifications

Defendants argue that Dr. Baselt is not qualified to offer expert opinions on law enforcement restraints, TASER usage, physical exertion, or cardiorespiratory compromise. (Doc. 168, Baselt Mot. at 4.) Defendants allege Dr. Baselt has no experience or training as a police officer or on TASER usage, and he does not have a medical degree qualifying him to diagnose patients or opine about medical causation. (Doc. 168, Baselt Mot. at 4.) Plaintiffs respond that as a well-recognized toxicologist and a leading expert in the field, whose work is relied upon by medical examiners, Dr. Baselt's opinion is reliable. (Doc. 207, Resp. at 4).

The Court has reviewed Dr. Baselt's CV. Dr. Baselt has a Ph.D. in pharmacology and over fifty years of experience in the field of toxicology. (Doc. 168-1, Baselt Mot., Ex. 2, Baselt CV at 1-2.) Dr. Baselt has written numerous peer-reviewed publications on the effects of toxic drugs on humans. (Doc. 168-1, Baselt CV at 3-7.) The Court finds that through his ample research and experience Dr. Baselt is qualified to offer expert opinion on the decedent's level of methamphetamine intoxication, as Defendants concede.

The Court is not persuaded that Dr. Baselt is qualified to offer expert opinions on law enforcement restraints, TASER usage, cardiorespiratory compromise, or specific medical causation and individual diagnosis. Dr. Baselt's CV contains no reference to

research or experience with law enforcement restraining techniques and their effect on the human body or about TASER usage and its effect on an individual. (Doc. 168-1, Baselt CV.) Further, Dr. Baselt is a trained toxicologist, not a medical doctor, and his CV lacks any reference to qualifications and experience, such as a medical degree or experience diagnosing patients, to offer an opinion about specific medical causation and individual diagnosis. (Doc. 168-1, Baselt CV); *see In re Silicon Gel Breast Implants Products Liability Litigation*, 318 F. Supp. 2d 879, 913 (C.D. Cal. 2004) (finding a toxicologist is not qualified to testify on specific medical causation or individual diagnosis). Dr. Baselt thus is not qualified to opine on law enforcement restraints, TASER usage, cardiorespiratory compromise, or specific medical causation and individual diagnosis relating to any of these areas.

Additionally, Dr. Baselt offers no methodology, peer reviewed studies, or data he relied upon about TASERs, law enforcement restraints, or cardiorespiratory compromise to form the basis for his report. (Doc. 168-1, Baselt Mot., Ex. 1, Baselt Report at 2.) Plaintiffs fail to offer any additional argument regarding Dr. Baselt's qualifications or the reliability of his opinions on these specific areas, leaving the court—and, as importantly, Defendants—to guess how Dr. Baselt formed his opinion and on what, if any, scientific methodology he rested his inferences. (Doc. 207, Resp. at 4.) The Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co.*, 526 U.S. at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997)). Therefore, the Court will exclude Dr. Baselt's opinions on law enforcement restraints, TASER usage, physical exertion, and cardiorespiratory compromise on the *Daubert* reliability basis as well.

Similarly, Dr. Baselt's opinion that "methamphetamine by itself would not have caused this unfortunate outcome" is excluded. (Doc. 168-1, Baselt Report at 2.) This statement is intrinsically intertwined with his above opinions regarding medical causation and contributing factors to cause of death, and is therefore inadmissible. The Court will not reach a *Daubert* reliability analysis on the general effects of the decedent's level of

methamphetamine intoxication because Dr. Baselt's report offers no generalized conclusions regarding this subject, only an individualized medical causation opinion which is excluded, pursuant to the above analysis.[1]

**B.     Roger Clark**

Defendants move to exclude all medical opinions proffered by Plaintiffs' expert, Roger Clark. (Doc. 169, Clark Mot. at 1.) In addition, Defendants move to exclude all legal opinions and conclusions from Clark's testimony. (Doc. 169, Clark Mot. at 2.) Plaintiffs admit that Clark is not qualified to give medical opinions, and concede that his expert testimony will be limited to law enforcement subjects of: use of force, training, policies, tactics, procedures, administration, supervision, and discipline. (Doc. 207, Resp. at 6.)

The Court accepts Plaintiffs' concession, and finds that Clark is not qualified to opine about medical causation, physiological effects of a TASER, the progression of asphyxiation, the medical effects of a carotid hold, or any medical opinions related to Sanchez's cause of death. Clark has no medical training, experience in medical diagnosis, or any qualifications that would permit him to address medical issues. (Doc. 169-1, Clark Mot., Ex.1, Roger Clark CV.) The Court accepts Plaintiffs limitations that Clark will not opine about "(1) TASER engineering, or electronic function, (2) medical risks or physiological effects associated with being exposed to a TASER, . . . (3) the lethality of the TASER . . . [or] whether the activated TASER actually delivered a stream of electricity to Sanchez." (Doc. 207, Resp. at 6).

Defendants' second contention, that Clark is not permitted to offer legal conclusions, raises the question about the extent to which an expert may offer opinions

---

[1] Although the Court excludes the opinion evidence offered in Dr. Baselt's expert report under *Daubert*, the Court also notes that Dr. Baselt's report defies the requirements set forth by Federal Rule of Civil Procedure 26(a)(2)(b). "The purpose of the expert report is to 'set forth the substance of the direct examination' and in effect, dispense with the need to depose the expert witness." *Burk v. State Farm Fire & Cas. Ins. Co.*, No. 14-cv-02642-PHX-SMM, 2017 WL 4676588, at *4 (D. Ariz. Mar. 27, 2017) (quoting Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment). Plaintiff's attempt to offer an expert report by Dr. Baselt comprising two paragraphs fails to set forth any such substance and fails to give Defendants any notice of what his testimony will comprise.

on matters that should lie with the jury. Federal Rule of Evidence 704 allows an expert to express an opinion on an ultimate issue to be decided by the jury, however, the Ninth Circuit has made clear that the propriety of an expert opinion on "ultimate issues" does not permit an expert to offer legal conclusions. *Muhktar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("However, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.").

To the extent that Defendants seek to preclude Clark from testifying as to what use of force is justified, or offering an opinion that a particular amount of force was not justified under the facts of this case, the motion is denied. In addition, in light of Clark's experience and training in police practices and the use of force generally, and the undisputed fact that a TASER is a device designed to obtain compliance through the application of physical force, Clark may opine about whether the use of the TASER was justified under the circumstances. Defendants have not established that such testimony must be excluded nor that this testimony constitutes a legal conclusion.

However, to the extent that Clark offers legal opinions and conclusions, his testimony is precluded. While Clark may freely opine that the officers should not have acted in the manner that they did, or that they should have done something else, he should not volunteer an opinion that the officers acted unconstitutionally or exercised excessive force. Legal opinions or conclusions are excluded from Clark's testimony. Accordingly, Defendants' motion is granted to the extent reflected above and is otherwise denied.

### C. Stan V. Smith, Ph.D.

Defendants move to exclude the testimony of Stan V. Smith, Ph.D. relating to decedent's economic loss and the "loss of value of life". (Doc. 170, Smith Mot. at 1.) Defendants argue that the economic loss calculations are based on speculation and that Smith reviewed insufficient data in order to reach such an opinion. (Doc. 170, Smith Mot. at 1–2.) Additionally, Defendants argue that Dr. Smith's "loss of value of life" opinion lacks reliability and invades the province of the jury. (Doc. 170, Smith Mot. at 2.) Plaintiffs maintain that Dr. Smith's opinions are admissible because they are based on

economics, which is a widely accepted and relied upon science, and the "loss of value of life" opinion in particular is well accepted and published in peer reviewed journals. (Doc. 207, Resp. at 6-7, 9.)

### 1. Economic Loss Opinion

Turning first to Dr. Smith's opinions on economic loss, Defendants argue that his economic damages calculations are speculative and not based on sufficient data. (Doc. 170, Smith Mot. at 3.) Defendants focus on the fact that Dr. Smith made his calculations assuming Sanchez would obtain a Commercial Driver's License ("CDL") and be working full-time as a truck driver by January 1, 2014 and continue to do so until age eighty. (Doc. 170-1, Smith Report at 4-5.) Defendants argue that this assumption is too speculative, and that Dr. Smith failed to evaluate how a truck driver employer would assess Sanchez's criminal and substance abuse history and the regular drug testing required in order to maintain truck driving employment. (Doc. 170, Smith Mot. at 4-5.)

Reliability analysis focuses on the "principles and methodology" of the expert, "not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. However, "conclusions and methodology are not entirely distinct from one another" and nothing "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. In loss of future income calculations, some assumptions about the future are required. For example, any calculation would have to assume how long an individual will work, whether or not they will be injured in the future, and that the individual will not change career paths, go to school, or otherwise make a significant life change. Here, Dr. Smith clearly identifies his assumptions that Sanchez would finish his CDL training and obtain employment in that area by 2014. (Doc. 170-1, Smith Report at 4-5.) The accuracy of these assumptions and whether Dr. Smith could project Sanchez's future earnings from those assumptions is a question better left to the jury. "Vigorous cross-examination" and "presentation of contrary evidence" during trial is the appropriate method for such a determination. *See Daubert*, 509 U.S. at 595. Additionally, these assumptions are not connected to the data

only by the *ipse dixit* of the expert, but rather by Sanchez's history of enrollment in the Phoenix Truck Driving Institute in 2011. (Doc. 170-1, Smith Report at 4; Doc. 170, Smith Mot. at 4-5.)

Despite challenging those base assumptions, Defendants do not argue that Dr. Smith's methodology for calculating the loss of future earnings projections was unreliable. Dr. Smith clearly identified the source of his wage data, accounted for the offset of personal consumption, real wage growth, and discount rates. (Doc. 170-1, Smith Report at 2-5.) Additionally, by looking at Table 9 of Dr. Smith's report, the jury can estimate wage loss based off of any age Mr. Sanchez stopped working, rather than just at age eighty. (Doc. 170-1, Smith Report at 25.) The Court therefore finds that Dr. Smith's calculation of future earnings does not entail the unreliability that would warrant exclusion of his opinion under the *Daubert* standard.

### 2. Loss of Value of Life Opinion[2]

Defendants argue that Dr. Smith's "loss of value of life" or hedonic damages opinions are unreliable. (Doc. 170, Smith Mot. at 2.) Dr. Smith's methodology combines many economic studies about what society pays to preserve the ability to lead a normal life. (Doc. 170-1, Smith Report at 6.) The underlying studies use government statistics to determine what risk premium employees demand to work in riskier jobs, assess consumer behavior and purchases of safety devices, evaluate what people spend on government-required reduction of risk purchases, as well as to perform cost-benefit analyses of government safety regulations and programs that reduce risk of death. From these

---

[2] Although Defendants argue in their Reply that Mr. Smith's opinion about hedonic damages is irrelevant as a matter of Arizona law, (Doc. 213, Reply at 8), the Court does not consider new arguments made for the first time in a reply. *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011) ("It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief.") (citing *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007)). The relevance argument has not been fully briefed by both sides; therefore, the Court will not decide the relevance issue at this time. The Court will move forward with the reliability analysis assuming that the hedonic damages are relevant for the purposes of this motion.

numbers, economists extrapolate the cost per life saved. (Doc. 170-1, Smith Report at 7.) For example, Dr. Smith explains:

> [a]s a hypothetical example of the methodology, assume that a safety device such as a carbon monoxide detector costs $46 and results in lowering a person's risk of premature death by one chance in 100,000. The cost per life saved is obtained by dividing $46 by the one in 100,000 probability, yielding $4,600,000.

(Doc. 170-1, Smith Report at 7.)

While the Ninth Circuit Court of Appeals has not directly ruled on the admissibility of the type of hedonic damage evidence that Dr. Smith offers, the court has offered concerns regarding Dr. Smith's model. The Ninth Circuit notes that it "may be informative to a jury to know what people spend voluntarily out of their own pockets to reduce their own chances of death." *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1195 (2005). However, the court notes that the usefulness of Dr. Smith's testimony is reduced when he averages the figure individuals may pay out of pocket "with other estimates, [which are] likely to be much higher, and not at all informative about how much people value their own enjoyment of life." *Id.* As the Ninth Circuit goes on to explain,

> [t]hat a government safety program costs a certain amount per life saved, or that the government requires purchase of a certain kind of safety equipment, may suggest a collective policy judgment the government has made, or may represent a policy selected for reasons other than the cost-benefit analysis "hedonic analysis" implies, or even a mistaken policy.

*Id.*; *see Mercado v. Ahmed*, 974 F.2d 863, 871 (7th Cir. 1992) (identifying other issues such as, election years and the influence of lobbying, that prompt government health and safety measures).

The Court agrees with the Ninth Circuit's evaluation that Dr. Smith's quantification of hedonic damages does not accurately project the value people place on the enjoyment of life, but rather an altered figure that could reflect many different

government policy judgements. Further, even if the figure only reflected what the public spends out of its own pockets on safety devices, this spending "is probably influenced as much by advertising and marketing decisions made by profit-seeking manufacturers . . . as it is by any consideration by consumers of how much life is worth." *Smith v. Jenkins*, 732 F.3d 51, 66-67 (1st Cir. 2013) (quoting *Mercado*, 974 F.2d at 871). The Court finds that Dr. Smith's calculations are too speculative and unconnected to how an individual values their life and is therefore not sufficiently tied to the facts of the case and is unhelpful to the jury in determining the "loss of value of life". Under Rule 702, Dr. Smith's "loss of value of life" testimony is inadmissible. *See, e.g.*, *Daubert*, 509 U.S. at 591 ("scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes"); *Ayers v. Robinson,* 887 F. Supp. 1049, 1064 (N.D. Ill. 1995) (ruling, after an extensive analysis of the methodology involved, that Dr. Smith's testimony failed to survive *Daubert* analysis and was unhelpful to the jury).

### D.  Michael M. Baden, M.D.

Finally, Defendants move to exclude Michael M. Baden's, M.D, opinion on the City's TASER Policy and his medical testimony about methamphetamine, restrictive breathing, and effects of TASER electrocution. (Doc. 172, Baden Mot. at 2.) Defendants argue that Dr. Baden is not qualified to offer opinions about police policy and his statements regarding police TASER policy should be excluded. (Doc. 172, Baden Mot. at 7.) Further, the Defendants argue that Dr. Baden's medical opinions are mere conclusions without any support from objective, independent research or verifiable evidence. (Doc. 172, Baden Mot. at 7-8.) Plaintiffs respond that Dr. Baden is a world renowned forensic pathologist and forensic pathology is "good science." Therefore Dr. Baden's opinion is reliable. (Doc. 207, Resp. at 10-11.)

The Court has reviewed Dr. Baden's CV and finds that he is not qualified to offer testimony regarding police policy or TASER use. Although Dr. Baden is a well credentialed forensic pathologist, the Court finds no reference to his experience or qualifications to offer opinions about police policy or TASER use in a law enforcement

setting. (Doc. 206-14, Baden CV.) Therefore, any reference in Dr. Baden's opinion to police procedures on police TASER use or appropriate TASER usage is excluded.

Dr. Baden's medical opinions are excluded entirely. The Court must evaluate the expert's reasoning and methodology to ensure that inferences or assertions are grounded in the scientific method. *Id.* at 592-93. Here, Dr. Baden's medical opinions are given without any reference to the scientific method. (Doc. 172-1, Baden Mot., Ex. 2, Baden Report.) The Court is unable to evaluate whether Dr. Baden's opinions are reliable because he does not include any reference to peer reviewed publications or any objective evidence to support his conclusions. (Doc. 172-1, Baden Report at 9-10.) Although Plaintiffs assert that "a forensic pathologist . . . can certainly render medical opinions based upon lab results," (Doc. 207, Resp. at 12), the Court cannot evaluate those opinions unless the methods used are identified, articulated, and presented to the Court. Dr. Baden's opinion, in its entirety, provides no basis to even start a *Daubert* analysis because he neither sets forth nor explains any methodology or reasoning. Therefore, the Court is unable to determine whether the methodology satisfies the *Daubert* factors of testability, peer review and publication, rate of error, or general acceptance. For this reason, Dr. Baden's medical opinions are excluded.

The Court need not address individual arguments of reliability surrounding positional asphyxia, methamphetamine lethality, and the physiological effects of electrocution. Although the parties may argue that a particular method is reliable in their briefing, the Court has no way of knowing what method Dr. Baden used in order to come to his particular conclusions. Dr. Baden's opinion is excluded entirely.

### III. CONCLUSION

The Court finds that Dr. Baselt is not qualified to offer opinions regarding law enforcement restraints, TASER usage, cardiorespiratory compromise, or specific medical causation and individual diagnosis. Mr. Clark is limited to opinions about law enforcement use of force, training, procedures, and administration, and may not opine about medical causation or any medical opinions related to Mr. Sanchez's cause of death.

To the extent Clark offers legal opinions and conclusions, his opinion is excluded. Dr. Smith's "loss of value of life" opinion is not relevant, is unhelpful to the jury and is therefore inadmissible and excluded; however, Dr. Smith's economic loss opinion is reliable and admissible. Finally, Dr. Baden's opinion is unreliable in whole because he fails to identify any methodology or procedures in forming his opinion.

**IT IS THEREFORE ORDERED** denying in part and granting in part Defendants' Motion to Exclude Plaintiffs' Expert Randall C. Baselt Ph.D. (Doc. 168), denying in part and granting in part Defendants' Motion to Exclude Medical Opinions From Plaintiffs' Police Expert Roger Clark (Doc. 169), denying in part and granting in part Defendants' Motion to Exclude Plaintiffs' Expert Stan V. Smith, Ph.D. (Doc. 170), and granting Defendants' Motion to exclude Plaintiffs' Expert Michael M. Baden, M.D. (Doc. 172).

Dated this 7th day of February, 2018.

Honorable John J. Tuchi
United States District Judge